In the Matter of the Estate of BENJAMIN HART, Deceased.

Surrogate's Court, New York County, October 17, 1939.

*Stewart & Shearer* [*Harry K. Davenport* of counsel], for the United States Trust Company, trustee, petitioner.

*Debevoise, Stevenson, Plimpton & Page* [*Francis T. P. Plimpton* and *Thomas T. Richmond* of counsel], for Edward S. Morrison, contingent remainderman.

*Morton G. Bogue,* for Isabel Lucchesi Hart Guillemin.

*Alexander & Green,* for Charles Breasted, distributee.

*Guggenheimer & Untermyer* [*Charles S. Guggenheimer, Mitchell Salem Fisher* and *Raphael Brill* of counsel], for Martha Hart, widow of Michael Hart.

*Benjamin Hart*, distributee, appearing in person.

*Benjamin C. Loder*, for Anne Brown, as executrix, etc., of Ida M. Brown.

*Jerome M. Hirsch*, for the State Tax Commission.

*John G. Jackson*, special guardian of Edward S. Morrison, Jr., and Barbara Morrison, infants.

*James J. Mennis*, for New York Society for the Relief of the Ruptured and Crippled.

*Oscar S. Rosner* [*Lester J. Morris* of counsel], for the Hospital for Joint Diseases.

*Cadwalader, Wickersham & Taft* [*Sidney P. Henshaw* of counsel], for the Washington Square Home for Friendless Girls.

*Emmet, Marvin & Martin* [*Richard S. Emmet* and *Elizabeth M. Graham* of counsel], for the Home for Incurables.

*Heywood & Benedict* [*Williston Benedict* of counsel], for the Society for the Relief of the Destitute Blind of the City of New York and Vicinity.

*Amend & Amend* [*William H. Amend* of counsel], for the Sisters of the Poor of St. Francis and St. Joseph's Hospital for Consumptives.

*Wolf & Kohn* [*Herbert W. Haldenstein, Theodore W. Adler* and *John W. Herz* of counsel], for The Home for Aged and Infirm Hebrews of New York.

FOLEY, S. This is a trustee's accounting in which a construction of the will is sought involving the validity of the exercise of a power of appointment and the method of distribution of the appointive property.

The testator died in 1908 and by his will he created a trust of his residuary estate for the benefit of his nephew, Michael Hart, for life. He conferred a power on the life tenant to appoint the remainder of the trust in the following language of his will: " and immediately after the death of my said nephew, then to grant, convey, assign and pay over the corpus or principal of the trust estate from which my said nephew was in his life time entitled to receive the income to such person or persons and in such manner and in such shares as he shall by his last Will and Testament in writing appoint in fee simple absolutely."

The will further provides: " and in default of such appointment then to convey the said corpus or principal unto the issue of my said nephew him surviving in fee simple absolutely share and share

alike *per stirpes* and not *per capita* and if my said nephew should die without leaving issue him surviving then to grant, convey, assign and pay over the said corpus or principal of the said trust estate from which my said nephew was in his lifetime entitled to receive the income to the person or persons who would then be entitled thereto as my next-of-kin under the laws of the State of New York then in force had I died intestate and domiciled in the State of New York and in the manner and in the proportions provided in said laws."

Michael Hart, the life tenant of the trust and donee of the power, died on April 27, 1936. The first eleven paragraphs of the donee's will which dispose of his entire estate make no mention of the power of appointment. After the usual direction for the payment of debts and funeral expenses he provided for general legacies of $265,000 and created a trust of the residuary estate for the benefit of his widow Martha for life. The remainder of the trust is given one-half to a cousin or to his issue *per stirpes* and one-half to eight charitable institutions.

The executor and trustee named in the donee's will is the same corporation now accounting as trustee under the donor's will.

By the twelfth paragraph of the will the donee confers slightly different powers on his trustee than those enjoyed by the trustee named in the donor's will.

The thirteenth paragraph of the donee's will provides: " I declare that in making this will I intend to exercise the power of appointment given to me by the will of my uncle Benjamin Hart, and I direct that all property passing under that power be applied to the satisfaction of the provisions of this will in the same manner as if I had owned such property absolutely at the time of my death."

The fourteenth paragraph directs the payment of estate taxes from the residuary estate as an administration expense. Finally the donee's will provides: " In the event that any of the legacies given by this will shall lapse or any of the provisions of this will should be ineffective to dispose of any part of my estate or of the property over which I have a power of appointment, I give, devise and bequeath all property not validly disposed of by this will to my wife Martha Hart absolutely in fee simple."

Reading the wills of the donor and donee together, the dispositive plan appears to be first a trust for the benefit of the donee for life with power to appoint the remainder " to such person or persons and in such manner and in such shares as he shall by his last Will and Testament in writing appoint *in fee simple absolutely*." (Italics mine.)

Secondly the donee expressly intended to exercise the power and directed that the appointive property be devoted to the same purposes as his individual property.

Thus the donee has directed that the appointive property be used to satisfy (a) estate taxes and administration expenses, (b) general legacies in his will, and (c) he has created a trust of the residue of the appointive property for the benefit of his widow for life.

The individual property of the donee amounts to approximately $64,000. The appointive property is in excess of $2,500,000. General legacies in the donee's will amount to $265,000. Estate taxes which he has directed to be paid from his residuary estate are in excess of $600,000.

The issues originally raised on the return of the citation related to the commissions payable to the corporate fiduciary acting as trustee under the donor's will and as executor and trustee under the will of the donee. Litigation of this question as to the method of transfer of the property accounted for disclosed the far more serious question as to the validity of the exercise of the power of appointment in so far as the donee attempted to create a trust for the benefit of his widow out of the appointive property. A supplemental citation was thereupon directed to be issued to all persons interested in the determination of that question. (*Matter of Hart*, N. Y. L. J. April 18, 1939, p. 1770.)

The issue as to the validity of the exercise of the power in the creation of a trust of the appointive property is governed by the recent decision of the Court of Appeals in *Matter of Kennedy* (279 N. Y. 255).

The fundamental question is whether or not the donee was limited to an appointment in fee or could appoint a lesser estate under the terms of the original power. Prior to the decision in *Matter of Kennedy (supra)*, the rule was generally accepted that a power to appoint a fee included the power to appoint a lesser estate in the absence of a positive restriction in the instrument creating the power. In commenting on this rule it was stated in *Matter of Kennedy (supra*, pp. 261, 262): "The assertion that, in the absence of positive and express words of prohibition to the contrary by the donor, the power conferred upon a donee to appoint a fee includes the power to appoint a lesser estate is, at most, only a doctrine of equity limited to particular cases where the circumstances require its application. It is not a rule of universal application. It has never been laid down as a rule of construction by our court. * * * Reliance upon any such general statement of a rule, even if applicable in a proper case, is unwarranted without consideration of its effect upon the intent and purpose of the testator."

In its decision the Court of Appeals repeatedly stressed the point that the intention of the donor of the power was of paramount importance, quoting with approval 4 Kent's Commentaries (p. 345), " The intention of the donor of the power is the great principle that governs in the construction of powers."

Examining the donor's will here with these tests in mind, we find a direction to the trustee " to grant, convey, assign and pay over the *corpus or principal* of the trust " to such persons as the donee may appoint " in fee simple absolutely." This language evidences an intention by the donor to vest the property finally and absolutely on the death of the donee and may readily be interpreted as a positive restriction against appointment of less than an absolute estate. Similarly the peremptory mandate to the trustee to convey and pay over the principal of the trust " *immediately* after the death " of the life tenant is strongly significant and is confirmatory of the testator's intention to vest the estate absolutely after the expiration of one life.

The circumstances of this estate do not warrant the application of the " doctrine of equity " referred to in *Matter of Kennedy* (*supra*) so as to validate the appointment in trust. To do so would be at variance with the intention of the donor and would be of no benefit to the widow of the donee, the primary and ultimate object of his bounty. No inequity is presented for correction.

I hold, therefore, that the donee was limited to an appointment of the property in fee and the attempt to create a trust of the appointive property transcends the power and is invalid. (*Matter of Kennedy*, 279 N. Y. 255.)

It is apparent that the donee himself and the draftsman of his will had doubts concerning the validity of the appointment of the property in trust. Litigation affecting the donor's will and the interest of a third party in the residuary trust was terminated by the decision of the Court of Appeals in 1913. ( *United States Trust Co.* v. *Hart*, 208 N. Y. 617.) The decision specifically referred to the power of appointment and pointed out that the third person claiming an interest in the estate had no interest therein except such claim as she might be able to establish if the donee of the power should die without having validly exercised the power of appointment granted to him and without leaving issue. The necessity for a valid exercise of the power must have been apparent to the donee. The donee or the draftsman of his will was not content with the appointment of the residue of the property in trust but was careful to add an additional clause providing that if " any of the provisions of this will should be ineffective to dispose of any part of my estate or the property over which I have a power of appointment, I give, devise and bequeath all property not validly disposed of by this will to

my wife Martha Hart *absolutely in fee simple.*" (Italics mine.) The alternative appointment to his wife " absolutely in fee simple " is particularly significant when considered with the language of the donor's will authorizing an appointment " in fee simple absolutely."

Here as in my decision in *Matter of Rogers* (170 Misc. 85) the donee and more likely the draftsman of his will doubted the validity of an appointment in trust and guarded against invalidity by the substitutional and alternative disposition of the appointive property by outright gifts.

The primary appointment in trust for the widow being invalid the alternative appointment to her in fee becomes effective.

There is no merit in the contention by the remaindermen of the invalid trust that the remainders be accelerated and the trust provisions disregarded. Invalidity permeates the entire plan of an appointment in trust prohibited by the donor. Judicial surgery will not be employed to thwart the clear purpose of the donee to provide for his widow, the primary object of his bounty.

Those seeking to uphold the validity of the appointment in trust attempt to distinguish *Matter of Kennedy* (*supra*) by pointing out that there the power of appointment was special and not general as here. They also cite numerous cases interpreting the phrases " to such persons," " in such manner " and " in such share " as permissive of an appointment in trust. *Matter of Kennedy*, however, specifically holds that there is not and never has been any rule of construction in this State that the power to appoint a fee includes the power to appoint a lesser estate and emphasizes the principle that the intent of the donor is determinative of the question. The donor's directions to transfer " immediately " on the death of the life tenant, " the corpus or principal " to such persons as he might appoint " in fee simple absolutely," are a clear expression of intention and cannot be ignored.

*Crooke* v. *County of Kings* (97 N. Y. 421), relied upon as sustaining the validity of the primary appointment in trust, has no application to the issues raised in this estate. That case does not hold that language similar to that employed by the donor here authorizes the appointment of less than a fee. The main issues in that case were the validity of the exercise of a *power of sale* and the validity of a trust, the duration of which was measured by the life of a person who was not a beneficiary. Even if the case did hold that the power to appoint a fee included the power to appoint a lesser estate its value as a precedent is destroyed by the sweeping pronouncements in *Matter of Kennedy*. Similarly *Matter of Wainwright* (248 App. Div. 336) was decided before *Matter of Kennedy* (*supra*) and the validity of the appointment in trust was not directly in issue in that case.

Finally there is nothing incongruous in giving a donee of a power an unlimited selection of appointees but limiting the appointment to an estate in fee. Limitation on the time during which power of alienation of property may be suspended and reasonable expedition of the termination of future estates have been part of the public policy of this State for more than a century and are firmly embedded in our statutes. (Real Prop. Law, § 42; Pers. Prop. Law, § 11, derived from 1 R. S. [1829] part 2, tit. 2, art. 1, § 15 [1 R. S. 723].)

A direction that absolute ownership should vest in someone after suspension during one life is not unreasonable but is laudable and in conformity with settled principles.

The Pennsylvania, Illinois, North Carolina and Georgia cases, particularly *Regents University System* v. *Trust Company of Georgia* (186 Ga. 498; 198 S. E. 345), cited in support of the contention that the primary appointment is valid, lack weight as pertinent precedents here because in each of these States the power of alienation may be suspended during any number of lives in being plus a minority, following the common-law rule. Absolute vesting of future estates within the briefer period permitted in New York is not part of the public policy of these States.

There remains for decision the method of payment of so much of the appointive property as is necessary to pay the administration expenses and estate taxes of the donee's estate and to satisfy the general legacies in his will. The donee did not direct payment of the appointive property to his executor to make these payments but directed that the property be " applied " for that purpose. There is no transfer of title to the executor of the donee. The direction to apply imposes the duty on the accounting trustee of the donor's estate to make the required payments directly without the intervention of the donee's executor. I so held under similar circumstances in *Matter of Rolston* (170 Misc. 548). (See the authorities therein cited and *Hirsch* v. *Bucki*, 162 App. Div. 659, 671; *Matter of Beaumont*, 147 Misc. 118, DELEHANTY, S.; *Matter of Terwilligar*, 142 id. 249, WINGATE, S.)

The appointive property must, therefore, first be applied directly to the deficit required to pay the estate taxes and thereafter directly to general legatees and the balance paid directly to the widow of the donee as the appointee thereof. The large amount assessed for taxes accrued because of the size of the appointive fund. Double administration expenses and commissions are avoided under the established judicial policy by this plan. (*Matter of Rolston, supra; Matter of Terwilligar, supra.*)

Submit decree on notice construing the will and settling the account accordingly.