**WILSON et al. v. KRAEMER, as Collector of Internal Revenue, et al.**

**Civ. 2260.**

United States District Court
D. Connecticut.

July 18, 1950.

Wilson, Hanna & Wanderer, Danbury, Conn., Frank J. Nardozzi, Mount Vernon, N. Y., for plaintiff.

T. L. Caudle, Asst. Atty. Gen., James P. Garland, Special Asst., Edward J. Lonergan, Asst. Dist. Atty., Hartford, Conn., for defendant.

SMITH, District Judge.

This is an action by the executors of a decedent's will to recover $202,575.06, allegedly overpaid as estate taxes. The question at issue is whether the value, $583,648.61, of property on the date of the decedent's death, over which he had a general power of appointment, is includible in the value of the decedent's gross estate under Section 811(f), as amended, of the Internal Revenue Code, 26 U.S.C.A. § 811(f).

Prior to 1942, property passing by the exercise of a power of appointment was includible in the decedent's gross estate. The Act of 1942 amended the provision to include the value of any property with respect to which the decedent has, at the time of his death, a power of appointment. There were excepted from the amendments, however, "any power to appoint created on or before the date of the enactment of this Act if it is released before January 1, 1943 * * *; or if the decedent dies before January 1, 1943 * * * and such power is not exercised". Section 403(d), 26 U.S. C.A.Int.Rev.Acts, page 331. The time limit mentioned in the above statute has been extended by successive enactments to July 1, 1950.

On July 26, 1930, Minnie E. Young created a trust over certain property, the income of which was to be paid to her son, Lewis G. Young, during his life, and the property in the trust estate to be paid over upon his death to such persons and upon such estates in trust or otherwise as he might, by his last will and testament, validly appoint, or, upon a failure by Lewis G. Young to make a valid appointment in whole or in part, to pay over the trust estate to his descendant or descendants in case he died with descendant or descendants him surviving. Minnie E. Young died October 21, 1931, leaving a last will and testament which was admitted to probate in New York. The will established a trust for the benefit of Lewis G. Young, income to be paid to Lewis G. Young for life, and with a power of appointment by will over the principal, with provision for payment over to Lewis G. Young's descendant or descendants, upon his failure in whole or in part to make valid appointment.

In Helvering v. Grinnell, 1935, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825 it was held that an attempt to execute a power of appointment to appoint to the person who would take under the donor's will in default of appointment was not effective because it did nothing and the value of property over which the decedent donee had attempted to exercise the power of appointment was held not includible in his gross estate.

Some four years later, on March 2, 1939, Lewis G. Young executed a will in which he purported to exercise his power of appointment over the two trust estates created by his mother, appointing some $20,000 to various persons and the remaining assets of the trust estates to his daughter, Edith Joan Young (now Edith Young Edwards).

On October 21, 1942 the amendment to the estate-tax law referred to above was enacted. On March 10, 1943 this section was interpreted by a Treasury regulation to make includible in the gross estate property subject to a power of appointment which is appointed to the taker in default of appointment, regardless of whether or not the appointed interest and the interest in default of appointment are identical and regardless of whether or not the appointee renounces any right to take under the appointment.

On December 6, 1943 the Supreme Court in Rogers' Estate v. Helvering, 320 U.S. 410, 64 S.Ct. 172, 174, 88 L.Ed. 134, in a case under the old statute, upheld the inclusion of property passing by appointment to the same persons who would have received estates of greater value in default of appointment without discussing the

Treasury regulation or the wording of the exceptions in the new statute, but remarked that "Where a donee of a power merely echoes the limitations over upon default of appointment he may well be deemed not to have * * * passed any property under such a power".

January 12, 1944 Lewis G. Young died, a resident of Connecticut, and his will, referred to above, was duly admitted to probate. Thereafter his daughter and only descendant, Edith Young Edwards, notified the trustees under the trusts created by Minnie E. Young's trust indenture and will that she renounced the purported exercise of the powers of appointment by Lewis G. Young and elected to take under Minnie E. Young's trust indenture and will. The trustees thereafter paid the assets of the trust estates over to Edith Young Edwards under the provisions of the trust indenture and will of Minnie E. Young.

Under the Grinnell case and the dictum in the Rogers case, it would be necessary to hold that the purported exercise of the power over the property which passed to Edith Young Edwards was ineffective and this property was not includible in the estate of the donee of the power, Lewis G. Young, unless it was made includible by the 1942 amendments to the Act.

■ By these amendments the Congress made the incidence of the tax depend, not upon the effective passing of property by the exercise of a power but rather upon the existence of the power to pass property in the donee of the power at the time of the death of the donee. The Congress apparently, however, desired to allow some time for adjustment in the case of powers in existence prior to the passage of the amendments. It excepted from the amendments powers created before the passage of the Act if released before January 1, 1943, or, if the decedent died before January 1, 1943, and "such power is not exercised". The time was extended on numerous occasions, the last extension before the trial of this case being to July 1, 1950.

It is argued that "exercise" in the exceptions means effective exercise; that an attempted exercise which did not pass the property is no exercise within the meaning of the exception; that, under the statement of the rule in the dictum in the Rogers case, the attempted exercise to pass property to Mrs. Edwards was ineffective since she would have taken the same estate in the same property in default of the attempted exercise as to her; that, moreover, she has actually renounced and not taken under the attempted exercise of the power; that, therefore, the exception applies, the 1926 Act, as it stood before the amendments of 1942, is applicable; and that, since the attempted exercise was not effective to pass the property to Mrs. Edwards, the value of the property which passed to Mrs. Edwards is not includible in the gross estate of the donee of the power, Lewis G. Young.

On the face of it, this is a plausible and consistent argument and is a possible interpretation of the terms of the exception in view of the wording of the Rogers opinion.

■ However, the Rogers opinion, although it was written in a case under the law as it existed prior to the 1942 amendments, was published after the draftsmen had chosen the terms to be used in the exception in the 1942 amendments. Moreover, had they intended so technical a meaning of "exercise", as would conform to the later Rogers dictum, it appears likely that they would have made the meaning clear. The structure of the exception, which started as an exception in the House bill, related only to non-general powers, extended by the Senate to general powers held under disability to release, further changed on the floor of the Senate to make it applicable to general powers released before a certain date, and in conference changed to the present exception by what the House conference report and later writers referred to as "a technical amendment", would appear to disclose a purpose to afford time to resurvey and adjust controls over property to the demands of the new legislation (Paul, Federal Estate and Gift Taxation, 1946 Supplement, Section 9.41, p. 297). This gives opportunity for affirmative action to avoid inclusion and also apparently, because in some cases affirmative action was thought to be im-

630

possible or difficult, intends to grant an exception where no action is taken. The Treasury assumed, and so provided in its regulation, that the Congress did not intend to except cases where the donee of the power attempted, whether effectively or not, to exercise the power, and this interpretation appears to fit in with the objectives sought by the granting of the exception. It is consistent also with the general approach of the new amendments to the problem, that is, making inclusion depend upon the existence of a power to affect property in the hands of the donee rather than upon the passage of property to the recipient.

Perhaps most persuasive as to the intent of the Congress in wording the exception is the fact that the exception has been extended without change in wording for additional periods, some nine times, most of which extensions have been enacted following the adoption by the Treasury of its interpretation.

I conclude, therefore, that the attempted exercise of the power by Lewis G. Young in his will to pass the property to Mrs. Edwards, his daughter and sole descendant, was such an exercise of the power as to make inapplicable the exception to the amendments of 1942 and was such an exercise as to make the property which the attempted exercise purported under the power to pass to Mrs. Edwards includible in the gross estate of Lewis G. Young.

Judgment may be entered in favor of the defendants, dismissing the complaint.