*Decision will be entered under Rule 50.*

ESTATE OF MABEL WOOSTER, THE UNION & NEW HAVEN TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12425. Promulgated October 23, 1947.

*Stanley Daggett, Esq.*, for the petitioner.
*Melvin L. Sears, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: The decedent had under the trust received a general power of appointment over trust corpus and income. The Commissioner included the value thereof in her gross estate, acting under section 811 (f), Internal Revenue Code, as amended by section 403 (a) of the Revenue Act of 1942; as further amended by Public Law 809, 77th Congress, December 17, 1942.[1]  In substance, that statute, as

---

[1] SEC. 403. POWERS OF APPOINTMENT.

(a) GENERAL RULE.—Section 811 (f) (relating to powers of appointment) is amended to read as follows:

"(f) POWERS OF APPOINTMENT.—

"(1) IN GENERAL.—To the extent of any property (A) with respect to which the decedent has at the time of his death a power of appointment, or (B) with respect to which he has at any time exercised or released a power of appointment in contemplation of death, or (C) with respect to which he has at any time exercised or released a power of appointment by a disposition intended to take effect in possession or enjoyment at or after his death * * *.

"(2) DEFINITION OF POWER OF APPOINTMENT.—For the purposes of this subsection the term 'power of appointment' means any power to appoint exercisable by the decedent either alone or in conjunction with any person, except

"(A) a power to appoint within a class which does not include any others than the spouse of the decedent, spouse of the creator of the power, descendants of the decedent or his spouse, descendants (other than the decedent) of the creator of the power or his spouse, spouses of such descendants, donees described in section 812 (d), and donees described in section 861 (a) (3). As used in this subparagraph, the term 'descendant' includes adopted and illegitimate descendants, and the term 'spouse' includes former spouse ; and

"(B) a power to appoint within a restricted class if the decedent did not receive any beneficial interest, vested or contingent, in the property from the creator of the power or thereafter acquire any such interest, and if the power is not exercisable to any extent for the benefit of the decedent, his estate, his creditors, or the creditors of his estate.

If a power to appoint is exercised by creating another power to appoint, such first power shall not be considered excepted under subparagraph (A) or (B) from the definition of power of appointment to the extent of the value of the property subject to such second power to appoint.  For the purposes of the preceding sentence the value of the property

amended, provides generally for inclusion in gross estate of any property with respect to which the decedent has at death a power of appointment. The parties have stipulated that the decedent here, at her death, had a general power of appointment with respect to one-half of the trust income, and one-half of the trust corpus, not to take effect until termination of the trust. Therefore, absent any further considerations, the property would be properly includible in gross estate. The petitioner contends, however, that other considerations do enter. The argument is separated between the interest allegedly not appointed to anyone, and the interest appointed to Clara. We take up the two views separately.

*As to the interest allegedly not appointed.*—Prior to the amendments by section 403 of the Revenue Act of 1942, section 811 (f) of the Internal Revenue Code had provided that "property *passing* under a general power of appointment exercised by the decedent (1) by will" (italics supplied) should be included in the decedent's gross estate. The amendments, so far as there involved, provided, instead, that property "with respect to which the decedent has at the time of his death a power of appointment" is to be included. The prime difference between the parties as to the interest allegedly not appointed to anyone is whether the 1942 amendments apply, for the petitioner argues that the decedent never *passed* any property, not having exercised her power as to the part not appointed to Clara, and that section 811 (f) prior to the 1942 amendments applies, to require *passing* of property; therefore, there can be no inclusion of the property in gross estate. The respondent, on the contrary, says the 1942 amendments do apply, requiring only that at the time of death the decedent have a *power* of appointment, that it has been stipulated that the decedent at her death did have such power of appointment,

---

subject to such second power to appoint shall be its value unreduced by any precedent or subsequent interest not subject to such power to apppoint."

\* \* \* \* \* \* \*

(d) POWERS WITH RESPECT TO WHICH AMENDMENTS NOT APPLICABLE.—

(1) The amendments made by this section shall not apply with respect to a power to appoint, created on or before the date of the enactment of this Act, which is other than a power exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, unless such power is exercised after the date of the enactment of this Act.

(2) The amendments made by this section shall not become applicable with respect to a power to appoint created on or before the date of enactment of this Act, which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, if at such date the donee of such power is under a legal disability to release such power, until six months after the termination of such legal disability. For the purposes of the preceding sentence, an individual in the military or naval forces of the United States shall, until the termination of the present war, be considered under a legal disability to release a power to appoint.

(3) The amendments made by this section shall not apply with respect to any power to appoint created on or before the date of the enactment of this Act if it is released before July 1, 1943, or within the time limited by paragraph (2) in cases to which such paragraph is applicable; or if the decedent dies before July 1, 1943, or within the time limited by paragraph (2) in cases to which such paragraph is applicable, and such power is not exercised,

and, therefore, the property must be included in gross estate. It is clear that, if the 1942 amendments do apply here, as to this portion of the property the respondent should be sustained. The petitioner relies upon section 403 (d) of the 1942 Act to prevent application of the amendments and apply the previous law. Subsections (1) and (2) of section 403 (d) do not here apply. Under section 403 (d) (3), if the power was created before the date of the act (as it was), and if the decedent died before July 1, 1943 (as she did), then, if the power was "exercised," the amendments apply. Therefore, under this heading and as to this portion of the property, we need only determine whether the power was "exercised" by the decedent. Her will states that "in the exercise of the powers aforesaid" she appoints one-half (of her one-half) of both income and trust principal and accumulations to her sister Clara (or her issue), if her sister Ruth does not survive her, the decedent. (Ruth would, under the original trust, take all in case the decedent died without appointing and without surviving issue. The decedent died without issue surviving.) It is then provided:

* * * If my sister Ruth survive me this will shall not operate as an exercise of said powers with respect to the income and principal not herein appointed to my sister Clara or her issue.

The petitioner therefore says that the decedent *did not* exercise her power as to the part not appointed to Clara; that is, one quarter of the whole. The respondent's contention is, in effect, that, by dealing with the power at all (the petitioner admits there was exercise of power as to the part appointed to Clara), it was exercised within the meaning of section 403 (d) (3); therefore, the 1942 amendments apply and the whole property is includible in gross estate. He points to the recitation "in the exercise of the powers aforesaid"; also to a further provision of the will, in effect, that, if Ruth does not survive the decedent, all trust principal to which decedent has at death a power of appointment is appointed to Clara.

We ascribe no weight here to the recitations as to "in the exercise of the powers aforesaid," for the appointment to Clara was in such exercise, and the recitation is offset by the later statement that, if Ruth survive, the will shall *not* operate as an exercise as to the income and principal not appointed to Clara. Nor do we consider of any effect here the contingent provision that, if Ruth fails to survive the decedent, Clara, or her issue, shall take the entire principal as to which decedent at death has power of appointment. This for the reason that such provision never became effective. The will, which the parties agree was ambulatory, was not effective as an appointment until the instant of decedent's death. *McGee* v. *Vandeventer*, 326 Ill. 425; 158 N. E. 127; *Bradford* v. *Andrew*, 308 Ill. 458; 139 N. E. 922. Ruth did, in fact, survive the decedent, so the contingency of Ruth's not surviving

never arose and does not affect our question. That question is: Did the decedent exercise the power to appoint, otherwise than as to Clara? After extensive study of the nature of powers, we are of the opinion that she did not. A partial execution of a power does not release it as to other property or exhaust it. Sugden on Powers (8th Ed.), pp. 72, 84. At page 272 it is said:

Powers of appointment and revocation need not be executed to the utmost extent at once, but may be executed at different times over different parts of the estate, or over the whole estate, but not to the fullest extent of the power. * * * So where a man has a general power of appointment he may exercise it at several times, and appoint an estate for life at one time, and the fee at another time. * * * So powers of jointuring, &c may in like manner be executed at different times, provided that the party do not in all the executions exceed the limits of the power.

In *Estate of I. H. Burney*, 4 T. C. 449, we said in substance that a power was exhausted as to beneficiaries which by an exercise *eliminated* them. Here, Ruth was not eliminated, or affected by the exercise as to Clara, above the amount appointed to Clara, for, in the absence of any action by the decedent, Ruth would take all. Clearly, then, unless the mere exercise of the power to Clara only constitutes exercise within the general meaning of section 403 (d) (3), and, therefore, as to all of the property and income, the part not appointed to Ruth, who takes it anyway without such action, should not be considered as subjected to an exercise of the power. "A power may be exercised from time to time by partial and successive executions, to suit convenience and promote advantage, as exigencies arise, or as expediency may suggest, and a partial exercise of a power is not invalid because it does not exhaust the power." 49 C. J. Powers, p. 1302, citing numerous cases. In *Estate of Addie Ludlow Bingham*, 7 T. C. 1303, we held that partial exercise of a power does not exhaust it.

We hold that the decedent did not exercise the power, except as to the one-quarter interest in principal and income appointed to Clara; that, therefore, above that share the 1942 amendments do not apply, and the property under the earlier act did not pass by appointment, and should not be included in the decedent's gross estate. Such cases as *Estate of Rogers* v. *Commissioner*, 320 U. S. 410, and *Estate of Louise V. Kerr*, 9 T. C. 359, plainly do not here apply, for therein the person appointing took affirmative action with respect to the entire property and interests. Thus, in the *Kerr* case, the decedent not only appointed a life estate to her husband, but also appointed the remainder to the two sons, who would otherwise have taken all; and in the *Rogers* case, those who would have otherwise taken absolutely were appointed life estates. Thus we see that in those cases there was admittedly exercise of power, which is the element in question here. We have here no question as to whether exercise of power

to one who would take in any event is effective, which was the only point involved in those cases, but our problem has been whether there was in fact exercise, because of partial exercise to another.

*Share appointed to Clara.*—We pass then to the consideration of the quarter interest admittedly and without contingency appointed to Clara. The petitioner urges that the decedent appointed to a member of a limited class under section 811 (f) (2) (A), as amended, so that the amendments of 1942 do not operate; that Congress intended to give the decedent a chance to escape the tax; that a total release would have effected such escape; that a partial release does the same; that, having died before Connecticut passed a statute which provided for partial releases, the decedent had no reasonable alternative than to permit her will to stand, exercising the power to a member of a limited class; and that the decedent could not justly be required to release altogether, so that her will should be construed as combining an effective partial release with an exercise, thus excepting her power from the definition of power of appointment, under section 811 (f) (2) (A), and excluding the property from gross estate.

The argument is not well based, in the first place, for the reason that in fact the appointment by the decedent does not fall within section 811 (f) (2) (A). It is true that the decedent appointed to her father's daughter, but the section requires, for escape from definition of "powers of appointment" and inclusion of property in gross estate, that the power be one "to appoint within a class which *does not include* other than * * * descendants * * * of the creator of the power * * * " (italics supplied), while the power here was general—to appoint to anyone, not merely within the class described in section 811 (f) (2) (A). It is stipulated that the power of appointment was general. Thus the mere fact that decedent actually appointed to one in such limited class does not limit the *power*. Therefore, the appointment here made comes within the definition in section 811 (f), as amended by section 403 (a) of the Revenue Act of 1942. It follows that the situation here does not fall within the ambit of the General Counsel's ruling of November 6, 1942, cited by the petitioner, for the ruling concerns a power "exercisable in favor of a class which does *not* include persons other than those specified in section 811 (f) (2) (A) * * *," whereas the power here was *exercisable* in favor of *anyone*. This, in our view, disposes of petitioner's argument as to the quarter interest appointed to Clara. The further suggestion that Congress intended to give a donee opportunity to escape the tax can not avail against failure to comply with the statute, and the argument that the decedent, because of death before passage of the Connecticut statute, had no other reasonable alternative than to permit her will to stand, exercising the power in favor of a member of a lim-

ited class, falls because the power was, as above seen, exercisable beyond the limited class described in section 811 (f) (2) (A). Moreover, we think the petitioner errs in the view that prior to passage of the Connecticut statute effective July 8, 1943, the decedent could not have partially released the power to her sister, instead of exercising it. In general, a power is subject to release without specific statutory authority. 3 Restatement Property, sec. 334; *District of Columbia* v. *Lloyd*, 160 Fed. (2d) 581; Paul, Federal Estate and Gift Taxation, 1946, supp. sec. 9.42 and cases collected. We see no reason to distinguish, as the petitioner does, between complete and partial releases. We conclude and hold that the entire share of property appointed to Clara was subject to the power of appointment at the decedent's death, within the meaning of section 811 (f) (1), Internal Revenue Code, as amended by section 403 (a), Revenue Act of 1942, and properly includible in decedent's gross estate.

A Connecticut court, in a case brought by Ruth against the trustee and others, including Clara Merrill (the Commissioner not being included), ruled in connection with this matter, and the respondent argues that it is not controlling. The facts were stipulated. The petitioner and the respondent, however, appear in full agreement that the question there was whether, Louise having failed to exercise her power of appointment, the property passed as intestate property of the donor of the power, and that therefore the question here was not determined, nonexercise of power by Louise not being questioned, as both in effect say; and, since the petitioner does not rely on that case and requested no findings of fact as to such court decision, on brief saying "petitioner has not referred to the Connecticut case in its brief," we consider the matter abandoned. The judgment was, moreover, collusive. *Freuler* v. *Helvering*, 291 U. S. 35. It is given no effect.

The petitioner further, and briefly, suggests that trust principal is not receivable by Clara until termination of the trust and that Ruth receives none at any time, therefore, there is no "person receiving such property" (by reason of exercise, nonexercise or release of power of appointment), from whom the executor can recover a portion of the tax under section 826 (d), Internal Revenue Code (until termination of the trust); therefore, that taxation would be in violation of the Fifth Amendment of the Constitution, without due process of law. The respondent argues that the question of apportionment of the tax among the beneficiaries is for the states to determine, citing *Riggs* v. *Del Drago*, 317 U. S. 95; *Rogan* v. *Taylor, Executor*, 136 Fed. (2d) 598; and that the entire estate is available for discharge of the tax liability, the Government not being concerned (though suggesting that there is remedy under section 826 (d), since it does provide for recovery

of tax from the person receiving the property). In any event, no showing has been made here to overcome the presumption that the law is constitutional, and we hold that it is not shown to be unconstitutional. *Riggs* v. *Del Drago, supra.*

*Decision will be entered under Rule 50.*